## Western Union Cold Storage Co. v. L. R. Ermeling.

1. INSTRUCTIONS—*Where the Evidence is Conflicting.*—Where the evidence is conflicting the instructions should be accurate.

2. SAME—*Assuming Controverted Questions of Fact.*—An instruction which assumes the existence of a controverted question of fact is erroneous, as invading the province of the jury.

3. MEASURE OF DAMAGES—*Deterioration of Goods in Cold Storage.*—Where goods are placed in a cold storage warehouse and are ruined therein, the measure of damage is the market value of the goods at the time when taken from the warehouse, less the charges for storage.

4. CONSTRUCTION OF CONTRACTS—*When a Verbal Notice or Request is Sufficient.*—Where a written contract provides that one of the parties shall do a certain thing, if requested by the other, it not being provided that the request shall be in writing, a verbal request is sufficient.

**Transcript,** from a justice of the peace. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1897. Reversed and remanded. Opinion filed February 14, 1898.

MASTERSON, FOWLER & HAFT, attorneys for appellant.

J. S. McCLURE, attorney for appellee.

MR. PRESIDING JUSTICE ADAMS DELIVERED THE OPINION OF THE COURT.

Appellant sued appellee in a justice court, and judgment being rendered against it, it appealed to the

Circuit Court, where appellee again recovered judgment. The suit was to recover charges for the storage by appellant of 188 barrels of onions, and for other charges not specified in the abstract. Appellant issued a warehouse receipt to appellee for the onions, which reads as follows:

"Section D.                           No. 3866.
  "Room 6.                            Lot 938.
          "10 cents per barrel, per month.
                    CHICAGO, November 8, 1895.

"Received for storage in Western Warehouse D, subject to the conditions printed on back of this warrant, 188 (one hundred eighty-eight) barrels —— from —— said to contain onions —— and will deliver the same to the order of L. R. Ermeling & Co. upon payment of all charges and the surrender of this warrant properly indorsed.

            "WESTERN UNION COLD STORAGE CO.,
                    "By LEGRAND SMITH, Treasurer.
"Countersigned:         W. W. HOOK, Manager.

                    "CONDITIONS.

"All storage taken by this company subject to the following terms:

"It is agreed that all loss or damage to property occasioned by fire, water, leakage, vermin, ratage, breakage, accidental or providential cause, riot or insurrection, or to perishable property, is at owner's risk. Loose fish, loose meat and any class of goods not properly packed, at owner's risk. Not responsible for shrinkage in weights.

"This company will provide any desired temperature, but will not be responsible for results.

"Warehouse receipts must accompany delivery orders.

"No goods delivered without."

Twenty-five of the barrels were removed from the warehouse May 7, 1896, and the remainder from August 8, to August 10, 1896. It was proved that the onions were dry and in good condition when delivered to appellant, and that May 7, 1896, when the first lot of twenty-five barrels was taken from the warehouse, they were rotten, sprouted and worthless. The main contest between the parties, on the trial, was whether there was any agreement that the onions should be kept at any specified temperature, and on this question the evidence was conflicting. Appellee testified that, before storing the onions, he asked Mr. Birdsall, appellant's agent, if he could store and freeze a carload of onions for him, when Mr. Birdsall said he didn't know, that the price would be ten cents per barrel per month; that Birdsall called on him the next day and said it was all right, and that he, appellee, told him he wanted the onions frozen and kept at a temperature of fifteen or twenty degrees below freezing. Another witness testified that he was present during the conversation between appellee and Birdsall, and that Birdsall said he would store the onions at a temperature of fifteen to twenty-five degrees below freezing.

Birdsall testified that nothing was said between him and appellee about any specific degree of temperature.

Appellee's theory is that the onions sprouted and became worthless because not kept at a sufficiently low temperature. For this reason and because of the provision in the conditions attached to the receipt, viz.: "This company will provide any desired temperature, but will not be responsible for results," the question whether there was direction by appellee to keep the onions at a certain temperature, was a vital question, the decision of which by the jury might be decisive of

the case.   This being so, and the evidence being conflicting, the instructions should have been accurate.

The court gave to the jury, at appellee's request, the following instruction:

"5th.   The court further instructs the jury that if you believe from the evidence in this case the plaintiff violated its contract with the defendant in failing to keep the onions in question in this suit *in the temperature agreed upon*, and if the jury believe that said onions thereby became rotten and sprouted and of no value, then you should find the issues for the defendant and assess his damages at such an amount as said defendant has proved the value of said onions to be at the time of the delivery of the same to the plaintiff for storage, unless you should find that any portion of said onions could have been sold by said defendant after they were taken from the warehouse of the plaintiff.   Then the amount for which said portion could have been sold should be deducted from the value of said onions at said time."

The words in the instruction "the temperature agreed on," assume that the temperature was agreed on by the parties.   Whether they did or not agree on any temperature was, as before stated, a controverted question of fact, and was for the jury to decide.   The instruction is also erroneous as to the measure of damages.   It appears from the evidence that the appellee did not seek to withdraw from storage any of the onions until May 7, 1896.   Suppose that they had all been in good condition and he had withdrawn them all at that date.   In such case he would clearly have been liable for the storage.   Now if he sought, about May 8, 1896, to withdraw all the onions, in case they were sound, and if then they were worthless, he is not entitled to be placed in a better position pecuniarily than he would be in if the onions had remained sound.   He

could only recover, in such case, the market value May eighth, less storage charges.

The court also gave the following instruction for appellee:

"The court further instructs the jury that the burden of proof is upon the plaintiff in this case to show that it kept its contract with the plaintiff to store said onions in the temperature desired by him."

Instead of the word "plaintiff," as last used in this instruction, defendant was evidently intended. So assuming, the error first commented on appears in the words "in the temperature desired by him."

Appellee's second instruction also announces an incorrect measure of damages.

We do not agree with the contention of appellant's counsel, that evidence of a verbal agreement to keep the onions in a certain temperature is inadmissible.

If a written contract provides that one of the contracting parties shall do a certain thing, if requested by the other, it not being provided that the request shall be in writing, it does not follow, as appellant's counsel seem to assume, that the request must be in writing. In such case a verbal request is sufficient.

Inasmuch as there must be a retrial of the cause, we will suggest that instructions as to damages should not omit all consideration of the plaintiff's claim.

For the errors indicated, the judgment will be reversed and the cause remanded.